Good morning, Your Honors. May it please the Court, my name is Kathryn Kimball Windsor and I represent the appellant Armando Molina. I'd like to reserve four minutes for rebuttal. Excuse me, four? Four. We raised three Sixth Amendment claims in this case and unless the McCoy right to maintain factual innocence issue and then move to the Speedy Trial claim. Starting with that McCoy claim, in a series of cases over the past 50 years, the Supreme Court has delineated decisions that a criminal defendant who is represented by counsel retains pursuant to the Sixth Amendment. And the lawyer gets to make really most of the decisions. The lawyer decides what motions to file, what witnesses to call, what objections to make, the things that we think of as trial management or strategy. But the defendant retains certain fundamental decisions that relate to the objectives of the defense and the personhood or autonomy of the defendant to determine those objectives. Those are whether to represent himself, that's from the Feretta case, whether to plead guilty or go to trial, whether to waive a jury trial, whether to testify, whether to appeal. And in McCoy, the Supreme Court held that a criminal defendant has the right to insist that his lawyer maintain factual innocence and refrain from conceding or admitting factual guilt. Is there someplace in the record that you can point to where Mr. Molina indicated that he was objecting to the presentation of an entrapment offense versus just objecting to presentation of gang-related evidence? The first, it first came up during trial when Mr. Molina, when his counsel asked to pause the trial and Mr. Molina said, and he is, you know, not an educated person and he didn't say it in the most elegant way, but he said something like, I wasn't told about the rewarding of this entrapment, I think he says sentencing entrapment. And what he was referring to was this stipulation that had been discussed at the pretrial conference where the lawyer said we've come to this agreement with the government and the lawyer said we need to meet with our counsel. For some reason, we don't know why, that did not happen. When the stipulation was filed, it was only signed by the defense lawyers, there were two at that point, and it had been prepared by the other defense lawyer and the prosecutor. And so Mr. Molina, we have in volume nine of the excerpts, we have his emails that he submitted. He emailed his lawyer that night or the night before trial saying what was decided on that stipulation. I think he calls it frequently the rewarding or something about a rewarding, but that is clear that he's referring to the stipulation. And then in trial, the defense lawyer, well first of all, the government started by saying, talking about all of the prejudicial evidence of gang membership and Mexican mafia affiliation. And then in opening statement, the defense lawyer says that Mr. Molina did in fact deliver narcotics to a person who will be referred to as a confidential informant. And then promised that Mr. Molina would testify and admitted his gang membership, his prior conviction, and said that he would explain how he was entrapped. And both of those violated Mr. Molina's right to autonomy, to maintain his autonomy. And this is structural error, which is not subject to harmless error review. Part of that autonomy includes his ability to change his mind. There is evidence in the record that he also at times supported the entrapment, was interested in it, was providing assistance to his counsel in establishing the entrapment. So what are we supposed to do with it where there's nothing that we can call kind of on its face at least a formal objection to proceeding with that defense? I think that that objection that he made in court was the formal objection. But you're absolutely right, and that's very common in criminal cases, is that often clients are considering whether they want to plead guilty. They're considering, and they may go back and forth. I mean, we see that all the time that during a plea colloquy, somebody changes their mind. We see that a client may be trying to consider whether to testify or not. And that's often a decision that's really made at the last minute after all of the government's evidence comes in, maybe even after defense witnesses have testified. So the fact just that it was on the table is not a waiver, is not of that right to maintain innocence. Well, how's the district court supposed to know given these conflicting signals about the entrapment defense? When is the definitive objection that you'd point to? And was that a commitment where there's no further discussion or entrapment afterwards, or did he go back and forth again? Well, I think this is a really difficult case for the district court, because it's true. I mean, the only indication that the district court would have had was that the stipulation was only signed by the lawyers and not signed by the client. At that point, there was only one. So that was an indication. And really, from the district court's perspective, one would assume that the lawyer would have cleared this with his client. This is, though, such a profound violation of that right to autonomy that at the point that it arose in court, it was really after the beginning of trial that the district court would have really first been alerted to the fact that this had not been cleared. And I think one of the reasons we're asking for this bright line rule is so that it's clear to courts and to lawyers that if you're going to put on, if you're going to stand up an opening statement and admit that your client committed the crime, that you have to clear it with your client first. And really, at this point, Mr. Molina is about to get out of prison. He's almost served 13 years now. And so this isn't going to have a huge impact on him personally. But I think it's important for, particularly, defense lawyers to know that this is a bright line rule if you stand up and say, my client committed the crime. And it doesn't happen this often that you are putting on an affirmative defense. So is the bright line rule now that you're suggesting under McCoy that there has to be affirmative consent? That doesn't seem to be what McCoy requires. You know, I'm not actually saying that. And I do think that, you know, that I think probably the best practice, and a lot of district court judges do this in court, is if somebody is not, it's generally not required that there's something on the record, for example, that says that the defendant has chosen not to testify. It's usually, you know, the lawyer is an officer of the court and you can assume that that's happened when the lawyer says that. I do think that often the best practice is for judges to, for those big questions, to check in with the defendant and just make sure, hey, you know you have the right to testify. Are you knowingly deciding not to testify, to give up this right? So what can we say consistent with McCoy that would be a bright line? Yeah. I think it's, it really is just that simply that a lawyer cannot concede factual guilt. It has to maintain the client's factual innocence unless the client says, unless the client waives that right or tells the lawyer, yeah, let's go forward with entrapment. Let's do not guilty by reason of insanity. What does that mean in terms of factual innocence if legal innocence is maintained? How would you apply such a bright line? You know, if you concede four elements but contest the fifth, but the fourth is the actus reus, so you can say, I mean, is that factual? That's part of the problem with drawing this line. I think if you are, if you are contesting one of the elements, then I think, you know, I'm talking about when you are conceding all of the elements. Is this a rule about defenses? It's really a rule about the right to maintain innocence. I think it's going to come up mostly for affirmative defenses, affirmative, you know, entrapment, insanity, duress, the other affirmative defenses. And I think they all have unusual quirks about them. I mean, in the insanity case, the court's alternative holding was that it also, it violated, because there was imprisonment. If you win on insanity, you still, you're not going to walk out the door. Here, for entrapment, the unusual quirk is that you're pretty much always going to have to testify. And so if you're going forward on an entrapment defense without your client's what happened in this case, saying, my client's going to testify. And so that's the additional violation of the right to autonomy that happened here, because that is a decision that remains with the defendant. Do you want to address the Speedy Trial Act? Yes, I do. Thank you. Oh, am I, all right, I'll do that. I'll do that. I'll give you extra time. We've asked you a lot of questions. Okay. So the Speedy Trial Act claim, you know, this issue really dovetails with the request for new counsel in this case. And I wanted to just clarify one little fact that was a little unclear in the briefing. There were, there was the first counsel who was on the case for, I don't know, three to four years. And starting at year three, Mr. Molina started objecting and asking for new counsel and just saying, nothing's happening on this case going forward. At some, I think in one of the briefs, it said that the court then finally appointed new counsel. But what actually happened was that Mr. Molina persuaded a lawyer without any federal experience to take his case for free, just to do it, to get the experience. And that really shows just how desperate he was. Again, this was something that the district court didn't know at the time. The district court was immediately concerned with the lack of representation that was happening. And the lawyer wasn't showing up and wasn't, was missing deadlines. And even there was an OSC issued at some point. So, but then, and then when the final lawyer, the third lawyer was appointed, the case went to trial nine months later, which I think is about right. That's the amount of time you would expect in this fairly simple case. This is a really extreme situation where I guess to take the parallel argument that you, that didn't happen on the McCoy claim. And in this case, he did consent in writing, I believe, to all but two of the continuances. So what are we supposed to do with that? Yeah. So I think, I mean, honestly, I think as soon as we have one, that's enough, you know, one objection. There really are two. There's this, this one that's the January 2017, where on the government, the government made this great chart on page seven of their briefing, where at that point, the lawyer agreed, but Mr. Molina did not agree. And that happened during the whole, where he was requesting new counsel. There was a lot going on at that point. And then the other thing is that he filed at 2 ER 92, this pro se motion, where he really, he, he says that this delay in this simple case is inexcusable, in an inexcusable amount of time that justifies dismissal with prejudice. So we would submit that just right there, that he moved to dismiss the case with prejudice. And I am way over my time. As I said, we asked you a number of questions. I'll give you the four minutes you requested in rebuttal. And so we'll hear now from Mr. Miller Gootnick. Thank you, Your Honors. And may it please the Court, Ben Miller Gootnick for the United States. Defendant Armando Molina's six convictions should be affirmed. I'll begin with the McCoy issue and then move to the others. On McCoy, there's a more case specific and a more general way to resolve this issue, and we win under either. The case specific route focuses on the threshold question for the court in a McCoy challenge, which is what did the defendant expressly object to? That's because under McCoy and its discussion of Florida versus Nixon, it's only defendants express objectives, objections that count. Here, Molina expressly objected only to the evidentiary stipulation. That's clear at record 1702 to 03. Judge Thomas, your first question is exactly right. We think that's all he objected to here. So the court could simply hold that the only question here is whether Molina has a McCoy right to veto an evidentiary stipulation and that he does not. I guess, speaking of express objections, where did you develop this in your briefing? So we say at 25 that Mr. Molina expressly objected only to the evidentiary stipulation. That's when we first discussed this issue, and that's how we frame it as our lead point. We think that it's very clear at 1702 to 03 that what he's objecting to is the stipulation. He describes being uninformed about the rewording. We think he's saying the rewording that they did to it on Wednesday that was due on Wednesday or Thursday. There, he's referring to that final pretrial conference where they were discussing the stipulation. He said, I was never consulted, and I never agreed to it from the beginning. Also, we think at 24 of his brief, Molina says, Mr. Molina objected to the stipulation. And just now at argument, I took counsel to agree that what he's referring to there is to the stipulation and discussing whether or not that was shared with him, but that his objection really was just to the stipulation. And certainly, we think that's the only thing he expressly objected to, which is what McCoy requires. The more general route, though, here would be to hold that even where a defendant objects more broadly to either arguing entrapment or to conceding offense elements, McCoy and Reed give defendants only the right to determine the fundamental objective of the representation. And that fundamental objective means only the sought disposition, which of the three federal verdict doors of guilty, not guilty, or not guilty only by reason of insanity he wants to pursue. In McCoy, the Supreme Court held that where a defendant wants to seek a not guilty verdict, counsel can't ask for a guilty verdict. In Reed, this court likewise held that where a defendant wants to seek a clean not guilty verdict, counsel can't ask for a verdict of not guilty only by reason of insanity, a separate federal verdict that would result in confinement if successful. Here, counsel pursued Molina's chosen objective by presenting a defense that, if successful, would have resulted in Molina's sought not guilty verdict. That is all McCoy requires. A broader rule would have McCoy swallow Strickland, letting defendants challenge all sorts of tactical calls without showing prejudice. That line, how would you handle a situation in which the client wants a complete not guilty verdict, but the lawyer concedes to a lesser included? Which side of your line would that fall on? So I think the Second Circuit in Rosemond has held that it depends whether that's an issue in this case. So in the present case, if there were several charges, a counsel couldn't concede to any of them. But if there's something else that theoretically might be a crime, counsel could concede to elements that would establish that. And we think that's what the Second Circuit held in Rosemond, where a defendant objected to a counsel conceding that he performed the actus reus of hiring a hitman, but argued that he lacked the necessary mens rea for that crime. And the court there held that that was not structural error because McCoy, quote, is limited to a defendant preventing his attorney from admitting he is guilty of the crime with which he is charged. That's at 123 in Rosemond. But is it admitting to the guilt of the crime of which you have been charged if you concede all of the elements that say that there's an applicable defense? No, we don't think that's right. We think the McCoy right is limited to saying if a But we do think that allows putting on affirmative defenses. And we think this court has held that in Christian, where it held that a client lacks the right to veto presentation of a defense of self-defense. And haven't we also discussed the McCoy right as a concession of factual guilt? And wouldn't that be what this is? The verdict line you draw seems clear and may be easier to apply, but I'm not seeing that. I'm seeing a concession of factual guilt. So I don't think that's what those cases say, read in their best light. But I do want to start just by emphasizing first that Mr. Molina never objected to that. Again, we think that under McCoy, you have to expressly object. And Mr. Molina here never said, counsel, argue I didn't sell the drugs. I want to maintain factual innocence or anything like that. So we just don't think this case presents that question. But to that question, no. We think that the proper rule is that as long as the counsel pursues the client's sought, not guilty verdict, there's no McCoy challenge. We think a contrary rule would have McCoy swallow Strickland. And here's why. We think, as Judge Collins pointed out, there are all sorts of particular elements that might carry stigma and a client might really, really not want to admit. So you can imagine if the rule, you know, the theory of a rule that says counsel, a client would have an interest in not conceding all of the elements, there are crimes where even conceding one of the elements, a client might really strenuously object to that. And then we're really off to the races. You could imagine that a client might say, admitting these text messages, for example, that show evidence of an affair. My fundamental objective is to avoid having those come in. And then McCoy has swallowed Strickland because all sorts of tactical calls for which Strickland is the proper vehicle, including things that counsel mentioned today, issues in the opening and the like. We think for those types of tactical challenges, Strickland is the proper vehicle. But McCoy itself wasn't about the verdict. It was about the sentence. We think that in McCoy, the issue was that counsel conceded guilt over the client's objection. We think that counsel's reason for doing so was conceding guilt on some grounds, not to avoid others. But we think the basic principle of that case was that you can't concede guilt over your client's objection. But again, I do think it's important to note that here, Mr. Molina did not object to conceding factual innocence. He never said anything of that nature. So because under McCoy and under Florida v. Nixon, which McCoy discusses in its opening paragraph, a client has to expressly object to something his attorney did. We just don't think that that's presented in this case. Molina suggests in reply this broader rule, which he discussed here today, that conceding all the offense elements or arguing entrapment but not doing so in the alternative could be a problem. As I've mentioned, it's only his express objections that count, so that's not presented here. But we also do think that rule is wrong more generally. As I've discussed, we think it would open the floodgates because it would not be administrable in any way. We think this verdict-based approach is the only administrable approach. And we think it would lead to McCoy swallowing Strickland because instead of having defendants bring Strickland challenges to these tactical calls, they're now off to the races, recasting them as fundamental objectives. Unless the court has further questions on this issue, I'll turn to the substitution of counsel issue. There, we think the district court did not abuse its discretion when it did not appoint new counsel on the third day of trial. District courts have wide discretion to reject mid-trial requests for substitution of where a defendant has a history of failing to work collaboratively with multiple counsel. We think the district court here properly exercised the discretion and sufficiently explained its decision. And then finally, on the Speedy Trial Act issues, the district court did not plainly err by not dismissing the indictment under the Speedy Trial Act or Fifth or Sixth Amendments, claims Molina raises for the first time on appeal, and so plain error review applies. Molina waived his statutory challenge by failing to seek dismissal under the Speedy Trial Act in the district court. And the only place that he and his briefs and today has referenced that he's sought such a dismissal, we think, did not constitute that motion, but in any event was withdrawn and so cannot count as such a motion. So is the dismissal a total bore, or do we still review even the Speedy Trial Act for plain error, or is it just the Sixth Amendment we review for plain error? I think if you're asking on the first issue, if you rule for us, I don't think you necessarily need to reach the second issue. I think the third would lead to dismissal of the complaint. So the court should say that that was not plain error. We also think that the challenge is meritless because Molina sought or consented to nearly every continuance. And as counsel just discussed, it seems we're really narrowed just to these two continuances. And even on those, we think the district court sufficiently explained its reasons for excluding time, certainly under plain error review. His constitutional claims are likewise meritless because there was no plain error violation of the Barker Speedy Trial test. Unless the court has further questions, we'd respectfully ask that the court affirm. All right. Thank you, counsel. We'll hear a little from Ms. Windsor. Thank you. I just wanted to read exactly what the objection was. Mr. Molina said what page you want? This is on. I'm reading from my brief page 24. I can submit the excerpts site as well. But he says, I was never consulted about the sentencing entrapment, about the, I mean, about the entrapment thing, about the rewarding they did to it on Wednesday. And so he's clearly referring to the stipulation. And this is the really the heart of our argument that he, you know, that he was objecting to this entrapment defense that was being presented without his consent and over his objection. And what comes with entrapment is that you are admitting the elements of the offense, which is what happened in this case. Now, there are some, some sort of like borderline issues where there is a entrapment offense that is run in the alternative or is, you know, in the Christian case where the defense lawyer said, look, it wasn't my client who committed that assault, but if it was him, whoever it was, was acting in self-defense. And those marginal issues are different. Here, what Mr. Molina's objection was to this stipulation, which was presenting the entrapment defense, which involved admitting the elements, because that's just, I mean, that is with classic entrapment, that's what happens. And with saying that he was going to testify. Ultimately, he did not testify, which also shows that this was done over his objection. He is a pro se defendant at this point. And the government in both this, this issue and on the Speedy Trial Act issue is really requesting that just the perfect objection be, be is that for defendants who are, who are in appropriate persona, that they are given leeway to some extent. Let's argue that even if you construe the objection made as going not just to the evidentiary stipulation, but to entrapment, that he still would win because it has to be, you know, essentially that the lawyer is, is stipulating to legal guilt. Well, the, I mean, here in that, that's the same argument that happened in Reed as well. I mean, Reed, this court ruled on two grounds. The first ground is that an insanity defense could violate the McCoy right to maintain factual innocence. But also in insanity, there are these other issues that are clearly ruled that, that, um, that McCoy concerns the right to maintain factual innocence. The, the, the trouble I'm having is that on looking at 1702, which is, I think is what you, what you quoted where he says, I, I was never consulted about this sentencing entrapment thing about the rewarding that they did to it on Wednesday. He says, I was never, I never agreed to it from the, from the beginning. It's hard for me to read that as having to do with anything other than the stipulation, because there are other parts of the record where, for instance, he says, I was trying to get discovery for my entrapment defense. I think that's 1751 in the, in the record. So I just wonder what, what's the district court supposed to do with it? I mean, I think you answered that question earlier, and I'm not sure I'm asking a question, but just sort of describing that it's, it's hard to read the record as Mr. Molina clearly stating that he, that he doesn't want this entrapment defense. Yeah, I mean, this was just the only chance that he had to do it. This, this stipulation was done really right on the eve of trial. And, you know, entrapment just, when you're looking at just from this macro perspective, you know, just on a gut level, this is something that goes to the heart of what the case is, what the objective of the case was. This is not something that a defendant would ever do without consulting their client. To stand up in opening statement and say, my client committed these crimes, and he's going to testify without having the defendant's agreement. And that's what we're asking for that to be clarified. Just that bright line rule. But again, I'm not so sure the rule is bright, because you say factual innocence, but factual innocence has to be judged against a standard. And if the standard is, here are the elements, including the elements of the offense, and then elements of a defense that the jury needs to get through to enter a guilty verdict, and the facts are not being conceded that clear the path all the way to the guilty verdict, because the defense isn't being conceded, how is that a concession of factual guilt? I'm just talking about the elements of the offense, which is true for insanity. You're assuming that, you want to say that a defense doesn't count. So in other words, if the approach of the lawyer is that, I would be your bright line rule. Is that what I'm saying? All defenses, all affirmative defenses, are subject to McCoy and not Strickland. Well, yes. I mean, I can't speak, I haven't looked at every affirmative defense, but I think in a case where you're admitting all of the elements, yes, then I think that's the bright line rule. That was true also in the Reed case, that, you know, that insanity is unique in that it actually has a different judgment. But that was the... Not guilty by reason of insanity is not the same as not guilty, but duress and entrapment and other defenses lead to just not guilty. I think they're all, it's not guilty by reason of entrapment, it's not guilty, it's that the client is, the client's conduct is excused by this affirmative defense, where you're admitting all of the elements. At least in the standard case, you're admitting all of the elements of the offense and then saying, but that conduct is excused. And that's the difference between factual and legal innocence. That you would be saying, my client is factually guilty of the crime, but legally not guilty because of entrapment or insanity or duress or whatever other defense there might be. Okay. All right. Thank you. We're taking you over your time, but we appreciate both counsel's very helpful arguments and the matter of U.S. versus Molina is submitted for decision.
judges: COLLINS, THOMAS, JOHNSTONE